WY Sweetwater County District
Court 3rd JD
Nov 08 2024 03:49PM
2023-CV-0000244
74973534

**FILED**

James E. Fitzgerald (5-1469)
Michael J. Fitzgerald (7-5351)
The Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
307-634-4000 (Telephone)
307-635-2391 (Facsimile)
jim@fitzgeraldlaw.com
michael@fitzgeraldlaw.com

| | | |
|---|---|---|
| **STATE OF WYOMING** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| **COUNTY OF SWEETWATER** | ) | **THIRD JUDICIAL DISTRICT** |


TIFFANY GRUETZMACHER,                    )          Civil Action No. CV-23-244
                                                         )
         Plaintiff,                                )
                                                         )
vs.                                                    )
                                                         )
VAMAR INC., SAVIOL SAINT JEAN,    )
REY LOGISTICS, INC., OSVALDO       )
HERRERA PUPO, and AGUSTIN          )
SANCHEZ PAVON,                            )
                                                         )
         Defendants.                           )
                                                         )
ASHLEY HARRIS, as the Wrongful      )          Civil Action No. CV-23-229
Death Representative in the Matter       )
of the Wrongful Death of                    )
TYELER HARRIS, deceased              )
                                                         )
         Plaintiff,                                )
                                                         )
vs.                                                    )
                                                         )
VAMAR INC, SAVIOL SAINT JEAN,    )
AGUSTIN SANCHEZ PAVON,             )

EXHIBIT G

SAIA MOTOR FREIGHT LINE, LLC,       )
ANDREW GIBBS, EMOJI                 )
LOGISTICS, LLC, and ITS             )
LOGISTICS, LLC,                     )
                                    )
        Defendants.                 )

---

## PLAINTIFF HARRIS'S AMENDED COMPLAINT

Ashley Harris, the duly appointed Wrongful Death Representative in the Matter of the Wrongful Death of Tyeler Harris, by and through undersigned counsel, brings this *Amended Complaint* against Vamar Inc. (hereinafter Vamar), Saviol Saint Jean, Saia Motor Freight Line, LLC (hereinafter Saia), Andrew Gibbs, Emoji Logistics, LLC and ITS Logistics, LLC.

In support of this *Amended Complaint*, Plaintiff alleges the following.

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Ashley Harris is the widow of Tyeler Harris and is the duly-appointed Wrongful Death Representative of Tyeler Harris.

2.    Ashley Harris brings this action for wrongful death damages pursuant to Wyo. Stat. Ann. § 1-38-102 for pecuniary damages, exemplary damages, lost earnings and lost earning capacity, and damages for loss of future companionship, society, and comfort, due to the wrongful death of Tyeler Harris.

3.    Ashley Harris brings this action on behalf of those wrongful death beneficiaries entitled to recover damages for the wrongful death of Tyeler Harris under Wyoming law, including herself, the couple's three minor sons, and others as may be determined by the finder of fact.

4.    Defendant Vamar Inc. is a motor carrier incorporated in the State of Illinois with its principal place of business in Illinois.

5.    Defendant Saviol Saint Jean a/k/a Saviol Saint Gean was employed by an agent of, or otherwise retained, hired or authorized to drive by Vamar and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Vamar.

6.    Defendant Saia Motor Freight Line, LLC is a motor carrier, a Louisiana Limited Liability Company, with its principal place of business in Georgia.

7.    Defendant Andrew Gibbs was employed by, a contractor of, an agent of, or otherwise retained, hired or authorized to drive by Saia and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Saia.

8.    Defendant Emoji Logistics, LLC was, at all relevant times, a Florida Limited Liability Company, with its principal place of business in Florida.

9.    ITS Logistics, LLC is a Delaware Limited Liability Company, with its principal place of business in Nevada.

10.    *Personal Jurisdiction.* This Court has personal jurisdiction over all Defendants because they were a cause of the wrongful death of Tyeler Harris in Sweetwater County, Wyoming.

11.    *Subject Matter Jurisdiction.* This Court has jurisdiction over the claims because the amounts in controversy as to each defendant for the wrongful death of Tyeler Harris greatly exceed fifty thousand dollars ($50,000.00), exclusive of interest and costs.

12.    *Venue.* Venue is proper in this Court because the cause of action arose in Sweetwater County, Wyoming. *See* Wyo. Stat. Ann. § 1-5-109 ("An action for personal injuries or wrongful death may be brought in the county in which the cause of action arose").

13.    In compliance with Wyo. Stat. Ann. § 27-14-105(b), copies of this Amended

Complaint will be served, by certified mail, return receipt requested, on the Attorney General of the State of Wyoming and the Director of the Worker's Compensation Division, Department of Employment.

## II.    FACTS

14.    In the early morning hours of December 21, 2022, Saint Jean was driving westbound on I-80 in Sweetwater County, Wyoming.

15.    The roadway was icy.

16.    A motorist, Mr. Pavon, lost control of his pickup truck and utility trailer.

17.    The pickup and trailer jackknifed across I-80—the pickup itself rotated 180 degrees and was facing the wrong direction.

18.    At the same time, another driver, Herrera Pupo, was operating Rey Logistics' semi-tractor and trailer westbound on I-80.

19.    Herrera Pupo ran into Pavon's jackknifed pickup and trailer.

20.    Pavon's pickup turned an additional 90 degrees after the impact and came to a rest in the median.

21.    Rey Logistics' tractor and trailer came to a rest in the right-hand lane.

22.    Pavon's trailer came to a rest in front of Rey Logistics' tractor.

23.    Gibbs, operating Saia's semi-tractor and trailer, then approached the scene of the Pavon/Rey Logistics crash and avoided the Pavon and Ray Logistics vehicles by entering the median but came to a stop immediately adjacent to the crash, creating a danger to Tyeler Harris.

24.    Tyeler Harris, an Emergency Medical Technician with Memorial Hospital of Carbon County Ambulance MS64, and another EMT, Tiffany Gruetzmacher, were dispatched to the scene of the Pavon/Rey Logistics crash.

25.     When Tyeler Harris and Tiffany Gruetzmacher arrived on scene, they parked the ambulance in the left-hand lane with the emergency lights activated.

26.     Tyeler Harris then got out of the ambulance to attend those involved in the crash.

27.     Saint Jean, operating Vamar's semi-tractor and trailer, next approached the scene of the Pavon/Rey Logistics crash in the right-hand lane at a dangerous, high rate of speed, that was too fast for the conditions.

28.     Saint Jean did not apprehend the situation in front of him.

29.     Saint Jean drove Vamar's tractor and trailer from the right-hand lane into the left-hand lane and then struck the parked ambulance and Tyeler Harris.

30.     Tyeler Harris was thrown into the landing gear of Saia's trailer.

31.     Tyeler Harris perished at the scene.

32.     In the alternative, Saint Jean was operating Emoji Logistics' semi-tractor.

33.     Upon information and belief, Emoji Logistics, hired, trained, supervised, and entrusted its semi-tractor to Saint Jean.

34.     ITS Logistics, LLC was a brokerage company and assigned/brokered the load for Vamar and/or Emoji Logistics that Saint Jean was hauling at the time of the crash.

### III.     CLAIMS FOR RELIEF AGAINST VAMAR AND SAINT JEAN

#### A.     NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND VAMAR

35.     Plaintiff realleges the allegations above and below and incorporates them by reference.

36.     Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the Federal Motor Carrier Safety Act (hereinafter FMCSA).

37.     Saint Jean had a duty to use reasonable care while operating Vamar's commercial motor vehicle.

38.     Saint Jean had a duty to use extreme caution when operating Vamar's commercial motor vehicle in hazardous conditions that adversely affected traction.

39.     Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

40.     Saint Jean had a duty to keep a proper lookout for other persons using the roadway.

41.     Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the parked ambulance and Tyeler Harris, among other acts and omissions.

42.     Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

43.     As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Vamar when he negligently caused Tyeler Harris's wrongful death and injuries, Vamar is vicariously liable for Saint Jean's negligence.

## B.      NEGLIGENCE – VAMAR

44.     Plaintiff realleges the allegations above and below and incorporates them by reference.

45.     Vamar dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer trough Wyoming.

46.     Vamar had a duty to use ordinary care in its operations.

47.     Vamar, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

48.    Vamar had a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

49.    Vamar knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

50.    Vamar breached its and/or their duty to use ordinary care.

51.    Vamar's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### C.    NEGLIGENT HIRING AND RETENTION – VAMAR

52.    Plaintiff realleges the allegations above and below and incorporates them by reference.

53.    Vamar had a duty to exercise ordinary care when it hired and retained Saint Jean.

54.    Vamar breached its duty of ordinary care when it hired Saint Jean.

55.    Vamar breached its duty of ordinary care when it retained Saint Jean.

56.    Vamar's breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### D.    NEGLIGENT TRAINING – VAMAR

57.    Plaintiff realleges the allegations above and below and incorporates them by reference.

58.    Vamar had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme

caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

59.     Vamar breached its duty to train Saint Jean.

60.     Vamar's breach of its duty to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

### E.     NEGLIGENT ENTRUSTMENT – VAMAR

61.     Plaintiff realleges the allegations above and below and incorporates them by reference.

62.     Vamar supplied, directly or through a third person, the commercial motor vehicle Saint Jean was operating.

63.     Vamar knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Vamar should expect to be endangered by its use.

64.     Vamar's negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### F.     NEGLIGENT SUPERVISION – VAMAR

65.     Plaintiff realleges the allegations above and below and incorporates them by reference.

66.     In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Vamar, then Plaintiff alleges that Vamar had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk

8

of bodily harm to Tyeler Harris.

67.    Saint Jean was using a chattel of Vamar, namely the commercial motor vehicle leased to and/or owned by Vamar.

68.    Vamar knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

69.    Vamar knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

70.    Vamar's breach of its duty to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### G.    EXEMPLARY DAMAGES – SAINT JEAN AND VAMAR

71.    Plaintiff realleges the allegations above and below and incorporates them by reference.

72.    Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just." Wyo. Stat. Ann. § 1-38-102(c) (emphasis added).

73.    Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

74.    Saint Jean's willful and wanton misconduct was a direct and proximate cause of and played a substantial part in bringing about Tyeler Harris's wrongful death.

75.     Saint Jean was unfit to drive Vamar's semi-tractor and trailer, and Vamar was reckless in employing or retaining him to do so.

76.     Vamar, or a managerial agent of Vamar, authorized, approved of, or ratified the manner in which Saint Jean operated the semi-tractor and trailer.

77.     In the alternative, Saint Jean was a manager of Vamar and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tyeler Harris's wrongful death.

78.     As a result of the above, Vamar is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

### IV.     CLAIM FOR RELIEF AGAINST PAVON

79.     Plaintiff realleges the allegations above and below and incorporates them by reference.

80.     Pavon had a duty to use reasonable care while operating a motor vehicle.

81.     Pavon had a duty to have the motor vehicle he was driving under reasonable control.

82.     Pavon breached his duties when he lost control of his pickup truck and utility trailer, among other acts and omissions.

83.     Pavon's breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

84.     Pavon's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### V.     CLAIMS FOR RELIEF AGAINST SAIA AND GIBBS

#### A.     NEGLIGENCE AND VICARIOUS LIABILITY – GIBBS AND SAIA

85.     Plaintiff realleges the allegations above and below and incorporates them by

reference.

86.    Gibbs, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

87.    Gibbs had a duty to use reasonable care while operating a commercial motor vehicle.

88.    Gibbs had a duty to use extreme caution when operating Saia's commercial motor vehicle in hazardous conditions that adversely affected traction.

89.    Gibbs had a duty to have the commercial motor vehicle he was driving under reasonable control.

90.    Gibbs had a duty to keep a proper lookout for other persons using the roadway.

91.    Gibbs breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before entering the median, among other acts and omissions.

92.    Gibbs' breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

93.    Gibbs' breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

94.    As Gibbs was acting within the course and scope of his employment and/or agency relationship with Saia, Saia is vicariously liable its driver's negligence.

### B.    NEGLIGENCE – SAIA

95.    Plaintiff realleges the allegations above and below and incorporates them by reference.

96.    Saia dispatched, or otherwise directed, Gibbs to drive its semi-truck and trailer

through Wyoming.

97.    Saia had a duty to use ordinary care in its operations.

98.    Saia, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

99.    Saia has a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

100.    Saia knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

101.    Saia breached its and/or their duty to use ordinary care.

102.    Saia's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## C.    NEGLIGENT HIRING AND RETENTION – SAIA

103.    Plaintiff realleges the allegations above and below and incorporates them by reference.

104.    Saia had a duty to exercise ordinary care when it hired and retained Gibbs.

105.    Saia breached its duty of ordinary care when it hired Gibbs.

106.    Saia breached its duty of ordinary care when it retained Gibbs.

107.    Saia's breaches of its duties of ordinary care when it hired and/or retained Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### D.    NEGLIGENT TRAINING – SAIA

108.    Plaintiff realleges the allegations above and below and incorporates them by reference.

109.    Saia had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

110.    Saia breached its duty to train Gibbs.

111.    Saia's breach of its duty to train Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

### E.    NEGLIGENT ENTRUSTMENT – SAIA

112.    Plaintiff realleges the allegations above and below and incorporates them by reference.

113.    Saia supplied, directly or through a third person, the commercial motor vehicle Gibbs was operating.

114.    Saia knew or had reason to know that Gibbs was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Saia should expect to be endangered by its use.

115.    Saia's negligent entrustment of the commercial motor vehicle to Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

**F.    NEGLIGENT SUPERVISION – SAIA**

116.    Plaintiff realleges the allegations above and below and incorporates them by reference.

117.    In the alternative, if Gibbs was not acting within the course and scope of his employment and/or agency relationship with Saia, then Plaintiff alleges that Saia had a duty to control Gibbs to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tyeler Harris.

118.    Gibbs was using a chattel of Saia, namely the commercial motor vehicle leased to and/or owned by Saia.

119.    Saia knew, or had reason to know, that it had the ability to supervise and control Gibbs.

120.    Saia knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Gibbs.

121.    Saia's breach of its duty to supervise and control Gibbs was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

**VI.    CLAIMS FOR RELIEF AGAINST EMOJI LOGISTICS AND SAINT JEAN**

**A.    NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND EMOJI LOGISTICS**

122.    Plaintiff realleges the allegations above and below and incorporates them by reference.

123.    Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

124.    Saint Jean had a duty to use reasonable care while operating a commercial motor

vehicle.

125.    Saint Jean had a duty to use extreme caution when operating Emoji Logistics' commercial motor vehicle in hazardous conditions that adversely affected traction.

126.    Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

127.    Saint Jean had a duty to keep a proper lookout for other persons using the roadway.

128.    Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the jackknifed pickup truck and utility trailer, among other acts and omissions.

129.    Saint Jean's breach of his duties created a reasonably foreseeable increased risk of injury to Tyeler Harris.

130.    Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

131.    As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Emoji Logistics, Emjoi Logistics is vicariously liable for its driver's negligence.

## B.    NEGLIGENCE – EMOJI LOGISTICS

132.    Plaintiff realleges the allegations above and below and incorporates them by reference.

133.    Emoji Logistics dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer through Wyoming.

134.    Emoji Logistics had a duty to use ordinary care in its operations.

135.    Emoji Logistics has a duty to the public to avoid knowingly placing its commercial

truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tyeler Harris.

136.    Emoji Logistics knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

137.    Emoji Logistics breached its and/or their duty to use ordinary care.

138.    Emoji Logistics' breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## C.    NEGLIGENT HIRING AND RETENTION – EMOJI LOGISTICS

139.    Plaintiff realleges the allegations above and below and incorporates them by reference.

140.    Emoji Logistics had a duty to exercise ordinary care when it hired and retained Saint Jean.

141.    Emoji Logistics breached its duty of ordinary care when it hired Saint Jean.

142.    Emoji Logistics breached its duty of ordinary care when it retained Saint Jean.

143.    Emoji Logistics' breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## D.    NEGLIGENT TRAINING – EMOJI LOGISTICS

144.    Plaintiff realleges the allegations above and below and incorporates them by reference.

145.    Emoji Logistics had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use

extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

146.    Emoji Logistics breached its duty to train Saint Jean.

147.    Emoji Logistics' breach of its duty to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris' wrongful death.

### E.    NEGLIGENT ENTRUSTMENT – EMOJI LOGISTICS

148.    Plaintiff realleges the allegations above and below and incorporates them by reference.

149.    Emoji Logistics supplied, directly or through a third person, the commercial motor vehicle Saint Jean was operating.

150.    Emoji Logistics knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Emoji Logistics should expect to be endangered by its use.

151.    Emoji Logistics' negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### F.    NEGLIGENT SUPERVISION – EMOJI LOGISTICS

152.    Plaintiff realleges the allegations above and below and incorporates them by reference.

153.    In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Emoji Logistics, then Plaintiff alleges that Emoji

Logistics had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tyeler Harris.

154.     Saint Jean was using a chattel of Emoji Logistics, namely the commercial motor vehicle leased to and/or owned by Emoji Logistics.

155.     Emoji Logistics knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

156.     Emoji Logistics knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

157.     Emoji Logistics' breach of its duty to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

### G.     EXEMPLARY DAMAGES – SAINT JEAN AND EMOJI LOGISTICS

158.     Plaintiff realleges the allegations above and below and incorporates them by reference.

159.     Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just." Wyo. Stat. Ann. § 1-38-102(c) (emphasis added).

160.     Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

161.     Saint Jean's willful and wanton misconduct was a direct and proximate cause of

and played a substantial part in bringing about Tyeler Harris's wrongful death.

162.    Saint Jean was unfit to drive Emoji Logistics' semi-tractor and trailer, and Emoji Logistics was reckless in employing or retaining him to do so.

163.    Emoji Logistics, or a managerial agent of Emoji Logistics, authorized, approved of, or ratified the manner in which Saint Jean operated the semi-tractor and trailer.

164.    In the alternative, Saint Jean was a manager of Emoji Logistics and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tyeler Harris's wrongful death.

165.    As a result of the above, Emoji Logistics is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

### VII.    CLAIMS FOR RELIEF AGAINST ITS LOGISTICS

#### A.    NEGLIGENT HIRING

166.    Plaintiff realleges the allegations above and below and incorporates them by reference.

167.    Defendant ITS Logistics owed a duty to roadway users to select a skilled and competent contractor to transport its products in a safe and reasonable manner to avoid injury to other roadway users, including Tyeler Harris.

168.    Defendant ITS Logistics breached its duty owed to other roadway users, including Tyeler Harris, in one or more of the following ways, among others that may be learned during discovery in this matter:

    a.    In failing to investigate the safety and/or safety rating of Vamar Inc. and/or Emoji Logistics, LLC;

    b.    In hiring an unrated company without doing any further due diligence or investigation;

c.    In hiring an unacceptable company without doing any further due diligence or investigation;

d.    In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC had an adequate safety rating;

e.    In hiring an unsafe trucking company;

f.    In failing to investigate the number of crashes Vamar Inc. and/or Emoji Logistics, LLC trucks had previous to ITS Logistics hiring Vamar Inc. and/or Emoji Logistics, LLC to transport a load;

g.    In failing to investigate Vamar Inc.'s and/or Emoji Logistics, LLC's drivers, including Saint Jean;

h.    In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC did not have a history of logbook violations, mechanical defects of Vamar Inc. and/or Emoji Logistics, LLC semi-trucks and trailers, and non-compliance with Department of Transportation rules and regulations;

i.    In failing to investigate Vamar Inc.'s and/or Emoji Logistics, LLC's business practices to avoid Department of Transportation rules and regulations;

j.    In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC were qualified motor carriers;

k.    In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC had adequate levels of financial responsibility in violation of 49 C.F.R. § 387;

l.    In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC did not use fatigued drivers in violation of 49 C.F.R. § 395;

m.    In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC maintained proper accident registers and copies of accident reports in violation of 49 C.F.R. § 390; and

n.    In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC performed adequate inspections, repairs, and maintenance of vehicles their drivers used.

169.    As a direct result of Defendant ITS Logistics' negligence, Defendants Vamar Inc. and/or Emoji Logistics, LLC were assigned a load by Defendant ITS Logistics, despite Defendant Vamar Inc. and/or Emoji Logistics, LLC's lack of safety and fitness to transport the load, and ITS Logistics' conduct was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tyeler Harris's wrongful death.

## VIII.   DAMAGES

170.    Plaintiff realleges the allegations above and below and incorporate them by reference.

171.    As a result of the defendants' conduct, Ashley Harris and the other wrongful death beneficiaries are entitled to recover damages for the wrongful death Tyeler Harris including pecuniary damages, lost earnings, and lost probable future companionship, society, and comfort.

172.    As a result of Saint Jean's, Vamar's, and Emoji Logistics' willful and wanton misconduct, Ashley Harris and the other wrongful death beneficiaries are entitled to recover exemplary damages from Saint Jean and Vamar.


WHEREFORE, Plaintiff claims, for those entitled to recover damages for the wrongful death of Tyeler Harris, compensatory damages from each defendant in an amount to be determined at trial, and exemplary damages from Saint Jean and Vamar, costs, and such further relief as the Court deems just.

Dated November 8, 2024

_____/s/ *James E. Fitzgerald*_____
James E. Fitzgerald (5-1469)
Michael J. Fitzgerald (7-5351)
The Fitzgerald Law Firm
2108 Warren Avenue
Cheyenne, WY 82001
307-634-4000 (Telephone)
307-635-2391 (Facsimile)
jim@fitzgeraldlaw.com
michael@fitzgeraldlaw.com

*Attorneys for Plaintiff Harris*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served upon below listed counsel via e-file on November 8, 2024.

Scott E. Ortiz
Keith J. Dodson
Williams, Porter, Day & Neville, P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602
sortiz@wpdn.net
kdodson@wpdn.net

*Attorneys for Defendant Vamar, Inc.*

Khale J. Lenhart
Tyson R. Woodford
Hirst Applegate, LLP
P.O. Box 1083
Cheyenne, WY 82003-1083
klenhart@hirstapplegate.com
twoodford@hirstapplegate.com

*Attorneys for Defendants Saia Motor
Freight Line, LLC and Andrew Gibbs*

Patrick Holscher
Schwartz, Bon, Walker & Studer, LLC
141 S. Center St., Ste. 500
Casper, WY 82601
pat@schwartzbon.com

*Attorney for Defendant Augustin
Sanchez Pavon*

Colin M. Simpson
Larry B. Jones
David M. Hill
Burg Simpson Eldredge
Hersh & Jardine, P.C.
1135 14th Street
Cody, WY 82414
csimpson@burgsimpson.com
jones@burgsimpson.com
dhill@burgsimpson.com

*Attorneys for Plaintiff Gruetzmacher*

 

_____/s/ *James E. Fitzgerald*_____
James E. Fitzgerald