WY Sweetwater County District
Court 3rd JD
Nov 22 2024 12:15PM
2023-CV-0000244
75074326
**FILED**

Colin M. Simpson, WSB # 5-2312
Larry B. Jones, WSB # 5-1847
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
1135 14th Street
Cody, WY 82414
307-527-7891
307-527-7897 FAX
csimpson@burgsimpson.com
ljones@burgsimpson.com
*Attorneys for Plaintiff Gruetzmacher*

| | | |
|---|---|---|
| **STATE OF WYOMING** | ) | **IN THE DISTRICT COURT** |
| | ) | |
| **COUNTY OF SWEETWATER** | ) | **THIRD JUDICIAL DISTRICT** |

| | | |
|---|---|---|
| TIFFANY GRUETZMACHER, | ) | Civil Action No. CV-23-244 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VAMAR INC. and SAVIOL SAINT JEAN, | ) | |
| EMOJI LOGISTICS, LLC and | ) | |
| ITS LOGISTICS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ASHLEY HARRIS, as the Wrongful | ) | Civil Action No. CV-23-229 |
| Death Representative in the Matter | ) | |
| Of the Wrongful Death of | ) | |
| TYELER HARRIS, deceased | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VAMAR INC, SAVIOL SAINT JEAN, | ) | |
| AGUSTIN SANCHEZ PAVON, | ) | |
| SAIA MOTOR FREIGHT LINE, LLC | ) | |
| ANDREW GIBBS, EMOJI | ) | |
| LOGISTICS, LLC, and ITS | ) | |
| LOGISTICS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

EXHIBIT H

**PLAINTIFF GRUETZMACHER'S AMENDED COMPLAINT**

COMES NOW Tiffany Gruetzmacher, by and through her undersigned counsel, and brings her *Amended Complaint* against Vamar Inc. (hereinafter Vamar), Saviol Saint Jean, Emoji Logistics, LLC and ITS Logistics, LLC.  In support of this *Amended Complaint*, Plaintiff alleges the following.

## I.    PARTIES, JURISDICTION AND VENUE

1.    Tiffany Gruetzmacher is a resident of Carbon County, Wyoming.

2.    Defendant Vamar Inc. is a motor carrier incorporated in the State of Illinois with its principal place of business in Illinois.

3.    Defendant Saviol Saint Jean a/k/a Saviol Saint Jean was employed by an agent of, or otherwise retained, hired or authorized to drive by Vamar and was at all relevant times acting in the course and scope of his employment with, under the direction and control of, and/or in an agency relationship with Vamar.

4.    Defendant Emoji Logistics, LLC was, at all relevant times, a Florida Limited Liability Company, with its principal place of business in Florida.

5.    ITS Logistics, LLC is a Delaware Limited Liability Company, with its principal place of business in Nevada.

6.    *Personal Jurisdiction.*  This Court has personal jurisdiction over all Defendants because they were a cause of the personal injuries to Plaintiff Tiffany Gruetzmacher, in Sweetwater County, Wyoming.

7.    *Subject Matter Jurisdiction.*  This Court has jurisdiction over the claims because the amounts in controversy as to each defendant for the personal injuries to Plaintiff Tiffany Gruetzmacher greatly exceed fifty thousand dollars ($50,000.00), exclusive of interest and costs.

8.    *Venue.*  Venue is proper in this Court because the cause of action arose in Sweetwater County, Wyoming. Wyo. Stat. Ann. § 1-5-109.

9.      In compliance with Wyo. Stat. Ann. § 27-14-105(b), copies of this Amended Complaint will be served, by certified mail, return receipt requested, on the Attorney General of the State of Wyoming and the Director of the Worker's Compensation Division, Department of Employment.

## II.    FACTS

10.     In the early morning hours of December 21, 2022, Pavon, Herrera Pupo, and Saint Jean were all driving westbound on I-80 in Sweetwater County, Wyoming.

11.     The roadway was icy.

12.     A motorist, Mr. Agustin Sanchez Pavon, lost control of his pickup truck and utility trailer.

13.     The pickup and trailer jackknifed across Interstate 80 (hereinafter I-80)—the pickup itself rotated 180 degrees and was facing the wrong direction.

14.     At the same time, Mr. Herrera Pupo was operating a semi-tractor and trailer owned by Rey Logistics westbound on I-80.

15.     Herrera Pupo crashed into Pavon's jackknifed pickup and trailer.

16.     Pavon's pickup turned an additional 90 degrees after the impact and came to a rest in the median.

17.     Rey Logistics' tractor and trailer came to a rest in the right-hand lane.

18.     Pavon's trailer came to a rest in front of Rey Logistics' tractor.

19.     Plaintiff Tiffany Gruetzmacher, an Emergency Medical Technician with Memorial Hospital of Carbon County Ambulance MS64, and another EMT, Tyeler Harris, were dispatched to the scene of the Pavon/Rey Logistics crash.

20.     When Tiffany Gruetzmacher and Tyeler Harris arrived on scene, they parked the ambulance in the left-hand lane with the emergency lights activated.

21.    Tiffany Gruetzmacher and Tyeler Harris then got out of the ambulance to attend those involved in the crash.

22.    Saint Jean, operating Vamar's semi-tractor and trailer, next approached the scene of the Pavon/Rey Logistics crash in the right-hand lane at a dangerous, high rate of speed, that was too fast for the conditions.

23.    Saint Jean did not apprehend the situation in front of him.

24.    Saint Jean drove Vamar's tractor and trailer from the right-hand lane into the left-hand lane and then crashed into the parked ambulance and Tiffany Gruetzmacher and Tyeler Harris.

25.    Tiffany Gruetzmacher suffered serious and permanent injuries.

26.    In the alternative, Saint Jean was operating Emoji Logistics' semi-tractor.

27.    Upon information and belief, Emoji Logistics, hired, trained, supervised, and entrusted its semi-tractor to Saint Jean.

28.    ITS Logistics, LLC was a brokerage company and assigned/brokered the load for Vamar and/or Emoji Logistics that Saint Jean was hauling at the time of the crash.

### III.    CLAIMS FOR RELIEF AGAINST VAMAR AND SAINT JEAN

### A.  NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND VAMAR

29.    Plaintiff realleges the allegations above and below and incorporates them by reference.

30.    Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the Federal Motor Carrier Safety Act (hereinafter FMCSA).

31.    Saint Jean had a duty to use reasonable care while operating Vamar's commercial motor vehicle.

32.    Saint Jean had a duty to use extreme caution when operating Vamar's commercial

motor vehicle in hazardous conditions that adversely affected traction.

33.     Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

34.     Saint Jean had a duty to keep a proper lookout for other people using the roadway.

35.     Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before crashing into the parked ambulance and Tiffany Gruetzmacher and Tyeler Harris, among other acts and omissions.

36.     Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

37.     As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Vamar when he negligently caused Tiffany Gruetzmacher serious and permanent injuries, Vamar is vicariously liable for Saint Jean's negligence.

### B.  NEGLIGENCE – VAMAR

38.     Plaintiff realleges the allegations above and below and incorporates them by reference.

39.     Vamar dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer through Wyoming.

40.     Vamar had a duty to use ordinary care in its operations.

41.     Vamar, as a motor carrier, is subject to the laws, rules and regulations set forth in the FMCSA.

42.     Vamar had a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or

death to others, including Tiffany Gruetzmacher.

43.     Vamar knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

44.     Vamar breached its and/or their duty to use ordinary care.

45.     Vamar's breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## C.  NEGLIGENT HIRING AND RETENTION – VAMAR

46.     Plaintiff realleges the allegations above and below and incorporates them by reference.

47.     Vamar had a duty to exercise ordinary care when it hired and retained Saint Jean.

48.     Vamar breached its duty of ordinary care when it hired Saint Jean.

49.     Vamar breached its duty of ordinary care when it retained Saint Jean.

50.     Vamar's breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## D.  NEGLIGENT TRAINING – VAMAR

51.     Plaintiff realleges the allegations above and below and incorporates them by reference.

52.     Vamar had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

53.    Vamar breached its duty to train Saint Jean.

54.    Vamar's breach of its duty to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## E.  NEGLIGENT ENTRUSTMENT – VAMAR

55.    Plaintiff realleges the allegations above and below and incorporates them by reference.

56.    Vamar supplied, directly or through a third person, the commercial motor vehicle Saint Jean was operating.

57.    Vamar knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Vamar should expect to be endangered by its use.

58.    Vamar's negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## F.  NEGLIGENT SUPERVISION – VAMAR

59.    Plaintiff realleges the allegations above and below and incorporates them by reference.

60.    In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Vamar, then Plaintiff alleges that Vamar had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tiffany Gruetzmacher.

61.    Saint Jean was using a chattel of Vamar, namely the commercial motor vehicle leased to and/or owned by Vamar.

62.     Vamar knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

63.     Vamar knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

64.     Vamar's breach of its duty to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### G.  EXEMPLARY DAMAGES – SAINT JEAN AND VAMAR

65.     Plaintiff realleges the allegations above and below and incorporates them by reference.

66.     Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary <u>and exemplary</u>, as shall be deemed fair and just."  Wyo. Stat. Ann. § 1-38-102 (emphasis added).

67.     Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

68.     Saint Jean's willful and wanton misconduct was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

69.     Saint Jean was unfit to drive Vamar's semi-tractor and trailer, and Vamar was reckless in employing or retaining him to do so.

70.     Vamar, or a managerial agent of Vamar, authorized, approved of, or ratified the

manner in which Saint Jean operated the semi-tractor and trailer.

71.     In the alternative, Saint Jean was a manager of Vamar and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

72.     As a result of the above, Vamar is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

## IV.     CLAIMS FOR RELIEF AGAINST EMOJI LOGISTICS AND SAINT JEAN

### A.     NEGLIGENCE AND VICARIOUS LIABILITY – SAINT JEAN AND EMOJI LOGISTICS

73.     Plaintiff realleges the allegations above and below and incorporates them by reference.

74.     Saint Jean, as a commercial motor vehicle operator, is subject to the laws, rules and regulations set forth in the FMCSA.

75.     Saint Jean had a duty to use reasonable care while operating a commercial motor vehicle.

76.     Saint Jean had a duty to use extreme caution when operating Emoji Logistics' commercial motor vehicle in hazardous conditions that adversely affected traction.

77.     Saint Jean had a duty to have the commercial motor vehicle he was driving under reasonable control.

78.     Saint Jean had a duty to keep a proper lookout for other persons using the roadway.

79.     Saint Jean breached his duties when he failed to exercise extreme caution, failed to see what was open and apparent, failed to take notice of obvious dangers, and failed to stop before striking the jackknifed pickup truck and utility trailer, among other acts and omissions.

80.     Saint Jean's breach of his duties created a reasonably foreseeable increased risk

of injury to Tiffany Gruetzmacher.

81.     Saint Jean's breach of his duties was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

82.     As Saint Jean was acting within the course and scope of his employment and/or agency relationship with Emoji Logistics, Emoji Logistics is vicariously liable for its driver's negligence.

## B. NEGLIGENCE – EMOJI LOGISTICS

83.     Plaintiff realleges the allegations above and below and incorporates them by reference.

84.     Emoji Logistics dispatched, or otherwise directed, Saint Jean to drive its semi-truck and trailer through Wyoming.

85.     Emoji Logistics had a duty to use ordinary care in its operations.

86.     Emoji Logistics has a duty to the public to avoid knowingly placing its commercial truck drivers in hazardous or unsafe conditions which would pose a foreseeable risk of serious injury or death to others, including Tiffany Gruetzmacher.

87.     Emoji Logistics knew or should have known that weather conditions along the I-80 corridor on the day of the accident were poor with accumulated ice on the road.

88.     Emoji Logistics breached its and/or their duty to use ordinary care.

89.     Emoji Logistics' breach of its and/or their duty to use ordinary care was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## C. NEGLIGENT HIRING AND RETENTION – EMOJI LOGISTICS

90.     Plaintiff realleges the allegations above and below and incorporates them by

reference.

91.    Emoji Logistics had a duty to exercise ordinary care when it hired and retained Saint Jean.

92.    Emoji Logistics breached its duty of ordinary care when it hired Saint Jean.

93.    Emoji Logistics breached its duty of ordinary care when it retained Saint Jean.

94.    Emoji Logistics' breaches of its duties of ordinary care when it hired and/or retained Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

**D. NEGLIGENT TRAINING – EMOJI LOGISTICS**

95.    Plaintiff realleges the allegations above and below and incorporates them by reference.

96.    Emoji Logistics had a duty to exercise due care in designing a training program that would train its driver to use reasonable care while operating a commercial motor vehicle, to use extreme caution when operating a commercial motor vehicle in hazardous conditions that adversely affected traction, to have a commercial motor vehicle under reasonable control, and to keep a proper lookout for other persons using the roadway.

97.    Emoji Logistics breached its duty to train Saint Jean.

98.    Emoji Logistics' breaches of its duties to train Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

**E. NEGLIGENT ENTRUSTMENT – EMOJI LOGISTICS**

99.    Plaintiff realleges the allegations above and below and incorporates them by reference.

100.    Emoji Logistics supplied, directly or through a third person, the commercial motor

vehicle Saint Jean was operating.

101.    Emoji Logistics knew or had reason to know that Saint Jean was likely to use the commercial motor vehicle in a manner involving an unreasonable risk of physical harm to others whom Emoji Logistics should expect to be endangered by its use.

102.    Emoji Logistics' negligent entrustment of the commercial motor vehicle to Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

### F. NEGLIGENT SUPERVISION – EMOJI LOGISTICS

103.    Plaintiff realleges the allegations above and below and incorporates them by reference.

104.    In the alternative, if Saint Jean was not acting within the course and scope of his employment and/or agency relationship with Emoji Logistics, then Plaintiff alleges that Emoji Logistics had a duty to control Saint Jean to prevent him from conducting himself so as to create an unreasonable risk of bodily harm to Tiffany Gruetzmacher.

105.    Saint Jean was using a chattel of Emoji Logistics, namely the commercial motor vehicle leased to and/or owned by Emoji Logistics.

106.    Emoji Logistics knew, or had reason to know, that it had the ability to supervise and control Saint Jean.

107.    Emoji Logistics knew, or should have known, of the necessity and opportunity for exercising such supervision and control over Saint Jean.

108.    Emoji Logistics' breaches of its duties to supervise and control Saint Jean was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## G. EXEMPLARY DAMAGES – SAINT JEAN AND EMOJI LOGISTICS

109.    Plaintiff realleges the allegations above and below and incorporates them by reference.

110.    Under Wyoming law, "[w]henever the death of a person is caused by wrongful act, neglect or default," Wyo. Stat. Ann. § 1-38-101, "[t]he court or jury, as the case may be, may award such damages, pecuniary and exemplary, as shall be deemed fair and just." Wyo. Stat. Ann. § 1-38-102(c) (emphasis added).

111.    Saint Jean intentionally acted, or an intentionally failed to do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another.

112.    Saint Jean's willful and wanton misconduct was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

113.    Saint Jean was unfit to drive Emoji Logistics' semi-tractor and trailer, and Emoji Logistics was reckless in employing or retaining him to do so.

114.    Emoji Logistics, or a managerial agent of Emoji Logistics, authorized, approved of, or ratified the manner in which Saint Jean operated the semi-tractor and trailer.

115.    In the alternative, Saint Jean was a manager of Emoji Logistics and was acting within the course and scope of his employment when he was a direct and proximate cause of and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

116.    As a result of the above, Emoji Logistics is liable for Saint Jean's willful and wanton misconduct and for its own willful and wanton misconduct.

## V. CLAIMS FOR RELIEF AGAINST ITS LOGISTICS

## NEGLIGENT HIRING

117.    Plaintiff realleges the allegations above and below and incorporates them by reference.

118.    Defendant ITS Logistics owed a duty to roadway users to select a skilled and competent contractor to transport its products in a safe and reasonable manner to avoid injury to other roadway users, including Tiffany Gruetzmacher.

119.    Defendant ITS Logistics breached its duty owed to other roadway users, including Tiffany Gruetzmacher, in one or more of the following ways, among others that may be learned during discovery in this matter:

a.  In failing to investigate the safety and/or safety rating of Vamar Inc. and/or Emoji Logistics, LLC;

b.  In hiring an unrated company without doing any further due diligence or investigation;

c.  In hiring an unacceptable company without doing any further due diligence or investigation;

d.  In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC had an adequate safety rating;

e.  In hiring an unsafe trucking company;

f.  In failing to investigate the number of crashes Vamar Inc. and/or Emoji Logistics, LLC trucks had previous to ITS Logistics hiring Vamar Inc. and/or Emoji Logistics, LLC to transport a load;

g.  In failing to investigate Vamar Inc.'s and/or Emoji Logistics, LLC's drivers, including Saint Jean;

h.  In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC did not have a history of logbook violations, mechanical defects of Vamar Inc. and/or Emoji Logistics, LLC semi-trucks and trailers, and non-compliance with Department of Transportation rules and regulations;

i.  In failing to investigate Vamar Inc.'s and/or Emoji Logistics, LLC's business practices to avoid Department of Transportation rules and regulations;

j.  In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC were qualified motor carriers;

k.  In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC had adequate levels of financial responsibility in violation of 49 C.F.R. § 387;

l.  In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC did not use fatigued drivers in violation of 49 C.F.R. § 395;

m.  In failing to ensure that Vamar Inc. and/or Emoji Logistics, LLC maintained proper accident registers and copies of accident reports in violation of 49 C.F.R. § 390; and

n.  In failing to ensure Vamar Inc. and/or Emoji Logistics, LLC performed adequate inspections, repairs, and maintenance of vehicles their drivers used.

120.    As a direct result of Defendant ITS Logistics' negligence, Defendants Vamar Inc. and/or Emoji Logistics, LLC were assigned a load by Defendant ITS Logistics, despite Defendant Vamar Inc. and/or Emoji Logistics, LLC's lack of safety and fitness to transport the load, and ITS Logistics' conduct was a direct and proximate cause of, contributed to, and played a substantial part in bringing about Tiffany Gruetzmacher's serious and permanent injuries.

## VI.    DAMAGES

121.    Plaintiff realleges the allegations above and below and incorporate them by reference.

122.    As a result of the defendants' conduct, Tiffany Gruetzmacher is entitled to recover damages for her serious and permanent injuries, including but not limited to a moderate brain injury, lower lumbar injury, right wrist fracture, impaired swallow, daily headaches, anxiety, depression, vertigo, occipital bone fracture, left arm motor apraxia, severe emotional distress and post-traumatic stress.

123.    As a result of Saint Jean's, Vamar's, and Emoji Logistics' willful and wanton misconduct, Tiffany Gruetzmacher is entitled to recover exemplary damages from Saint Jean,

Vamar, and Emoji Logistics.

124.    As the sole, direct and proximate result of Defendants' actions and inactions, as more fully set forth above, and Defendants being jointly and severally liable for the same, Plaintiff Tiffany Gruetzmacher has suffered damages in the following particulars:

a.  Actual, special, and compensatory damages to Plaintiff Tiffany Gruetzmacher, including but not limited to:

  i.   Past, present and future, temporary and permanent pain, suffering, disfigurement, scarring, nervous shock, emotional distress, embarrassment, and loss of enjoyment of life;

  ii.  Past, present and future loss of physical functioning;

  iii. Past, present and future, temporary and permanent loss of earnings and damages for impaired earning capacity;

  iv.  Medical expenses, past, present and future, according to proof at the time of trial;

  v.   Permanent scarring and disfigurement; and

  vi.  Other pecuniary losses to Plaintiff Tiffany Gruetzmacher arising out of the injuries suffered by Plaintiff Tiffany Gruetzmacher in an amount to be proven at trial.

b.  exemplary damages from Saint Jean, Vamar, and Emoji Logistics;

c.  For costs of suit incurred herein;

d.  For pre-judgment and post-judgment interest as provided by law; and

e.  For such other and further relief as the Court may deem just and proper including injunctive, restitutionary and other equitable relief.

WHEREFORE, Plaintiff Tiffany Gruetzmacher prays for judgment against the Defendants, individually, collectively, jointly and strictly liable, as follows, as appropriate to each cause of action alleged, damages for:

    a. Actual, special, and compensatory damages to Plaintiff Tiffany Gruetzmacher, including but not limited to:

        i. Past, present and future, temporary and permanent pain, suffering, disfigurement, scarring, nervous shock, emotional distress, embarrassment, and loss of enjoyment of life;

        ii. Past, present and future loss of physical functioning;

        iii. Past, present and future, temporary and permanent loss of earnings and damages for impaired earning capacity;

        iv. Medical expenses, past, present and future, according to proof at the time of trial;

        v. Permanent scarring and disfigurement; and

        vi. Other pecuniary losses to Plaintiff Tiffany Gruetzmacher arising out of the injuries suffered by Plaintiff Tiffany Gruetzmacher in an amount to be proven at trial.

    b. exemplary damages from Saint Jean, Vamar, and Emoji Logistics;

    c. For costs of suit incurred herein;

    d. For pre-judgment and post-judgment interest as provided by law; and

    e. For such other and further relief as the Court may deem just and proper including injunctive, restitutionary and other equitable relief.

DATED this 22nd day of November, 2024.

/s/ Colin M. Simpson
Colin M. Simpson, W.S.B. #5-2312
Larry B. Jones, W.S.B. #5-1847
BURG SIMPSON ELDREDGE HERSH &
JARDINE, P.C.
1135 14TH Street
Cody, WY 82414
307-527-7891 Phone
307-527-7897 Fax
csimpson@burgsimpson.com
ljones@burgsimpson.com
*ATTORNEYS FOR PLAINTIFF*
*Tiffany Gruetzmacher*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was served upon below listed counsel via e-file on November 22, 2024.

Scott E. Ortiz
Keith J. Dodson
Williams, Porter, Day & Neville, P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602
sortiz@wpdn.net
kdodson@wpdn.net
*Attorneys for Defendant Vamar, Inc.*

Khale J. Lenhart
Tyson R. Woodford
Hirst Applegate, LLP
P.O. Box 1083
Cheyenne, WY 82003-1083
klenhart@hirstapplegate.com
twoodford@hirstapplegate.com
*Attorneys for Defendants Saia Motor Freight Line, LLC and Andrew Gibbs*

Patrick Holscher
Schwartz, Bon, Walker & Studer, LLC
141 S. Center St., Ste. 500
Casper, WY 82601
pat@schwartzbon.com
*Attorney for Defendant Augustin Sanchez Pavon*

James E. Fitzgerald
Michael J. Fitzgerald
The Fitzgerald Law Firm 2108 Warren Avenue
Cheyenne, WY 82001
jim@fitzgeraldlaw.com
michael@fitzgeraldlaw.com
*Attorneys for Plaintiff Harris*

                                        /s/ Colin M. Simpson
                                        Colin M. Simpson