## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING



FILED

*1:14 pm, 2/20/25*

**Margaret Botkins
Clerk of Court**

| | |
|---|---|
| TIFFANY GRUETZMACHER | |
| Plaintiff, | |
| v. | |
| VAMAR INC., SAVIOL SAINT JEAN, ITS LOGISTICS, and EMOJI LOGISTICS, | |
| Defendants. | |
| ASHLEY HARRIS, as the Wrongful Death Representative in the Matter of the Wrongful Death of TYELER HARRIS, deceased. | Case No. 24-CV-270-SWS |
| Plaintiff, | |
| v. | |
| VAMAR INC., SAVIOL SAINT JEAN, SAIA MOTOR FREIGHT LINE, LLC, ANDREW GIBBS, EMOJI LOGISTICS, LLC, and ITS LOGISTICS, LLC | |
| Defendants. | |

### ORDER REMANDING CASE TO STATE COURT

This matter comes before the Court on Plaintiff Ashley Harris's Motion to Remand (ECF 14), joined by Plaintiff Tiffany Gruetzmacher (ECF 18). Defendants Vamar Inc., Saviol Saint Jean, and ITS Logistics, LLC filed responses in opposition to remanding the action to state court. (ECF 19 & 20). For the reasons explained below, the Motion to Remand is granted and the consolidated action is remanded back to state court.

## LEGAL STANDARD

A lawsuit filed in state court that could have been filed in federal court may be removed by a defendant to federal court under 28 U.S.C. § 1441, using the procedure outlined in 28 U.S.C. § 1446. Compliance with § 1446 is important, though, because "[r]emoval statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted). "A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. *Aguayo v. AMCO Inc. Co.*, 59 F.Supp.3d 1225, 1249 (D.N.M. 2014) (citing *Huffman v. Saul Holdings LP,* 194 F.3d 1072, 1077 (10th Cir. 1999)). Under § 1446, a case removed based on diversity of citizenship "may not be removed … more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1). Additionally, under § 1446, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." § 1446(b)(2)(A). "The removing party has the burden to show that removal was properly accomplished." *McShares, Inc. v. Barry*, 979 F. Supp. 1338, 1342 (D. Kan. 1997)

## DISCUSSION

On December 20, 2024, Defendant ITS Logistics removed this civil action to federal court from Wyoming's Third Judicial District. (ECF 1). Then, on January 7, 2025, Plaintiffs filed a motion to remand the action back to state court. (ECF 14). In its Notice of Removal, ITS Logistics states complete diversity and the amount in controversy are satisfied, and further states that its petition falls within the bad faith exception to the one-year limitation on removal. (ECF 1). Plaintiffs counter that not only does the petition not fall within the bad faith exception, but ITS

Logistics also failed to get effective consent to removal by Emoji Logistics. (ECF 14).

1. **Bad Faith**

Plaintiff Harris filed the present action in state court on November 9, 2023. Plaintiff Gruetzmacher filed the present action in state court on November 20, 2023. Both lawsuits arise out of a multi-vehicle accident occurring December 21, 2022, and both Plaintiffs sued all Defendants on theories of negligence. On December 27, 2023, Defendant Vamar removed both cases to federal court. This Court remanded both cases to state court finding the notices of removal lacked unanimity of all Defendants. (See Case No. 23-CV-244, ECF No. 47). Upon return of the cases to state court, the two cases were consolidated.

Plaintiff Harris served her initial disclosures on April 22, 2024. Plaintiff Harris's initial disclosures included a photograph of the "Cab Card" for the vehicle Saint Jean was driving which listed "Emoji Logistics, LLC" as the owner/lessor and Vamar, Inc as the "Carrier Responsible for Safety." (ECF 14, Ex. 1). Plaintiff Harris also produced a Rate Confirmation between ITS Logistics and Vamar. (ECF 1, Ex. M). Plaintiff then served interrogatories and requests for production on Vamar which requested "title, registration, ownership, lease and related documents for the tractor, tractor-trailer" and "all employer(s) of Mr. Saint Jean at the time of the … incident and … for the three years prior." (ECF 14, Ex. 2 & 3). Vamar's responses were due October 7, 2024. Vamar contends it then asked for and received an extension in which to respond to Plaintiff's requests. At the same time, Vamar's counsel was discussing with Plaintiffs' counsel their intent to request a stay of the discovery pending Saint Jean's ongoing criminal proceedings—a request which Plaintiff's counsel opposed stating the need to "conduct discovery to verify [they] named the correct defendants before the two-year wrongful death statute of limitations expires." (ECF 14, Ex. 4). On October 16, 2024, Vamar informally disclosed a Lease Agreement between Vamar and

Emoji Logistics via email to Plaintiffs' counsel. (ECF 14, Ex. 6). Then, on October 21, 2024, Vamar formally responded to Plaintiff Harris's discovery requests which included a screenshot of text messages between Saint Jean's co-driver and representatives of Vamar and Emoji. (ECF 14, Ex. 9).

Following Vamar's responses to Harris's discovery requests, on October 31, 2024, Harris conferred with the Defendants of her intent to add ITS Logistics and Emoji Logistics as defendants. (ECF 14, Ex. 10). After receiving the consent of all parties on November 6, 2024, Harris and Gruetzmacher requested leave to amend their complaints in state court. Harris moved to amend on November 6, 2024, and the court granted the motion on November 8, 2024. Harris filed an amended complaint that same day. (ECF 2, 5, & 7). On November 19, 2024 Gruetzmacher moved to amend and the state court granted the motion on November 20, 2024. Gruetzmacher filed an amended complaint on November 22, 2024. (ECF 3, 6, & 8). Harris served the complaint on ITS on November 21, 2024, and Gruetzmacher served the complaint on ITS on December 2, 2024. On December 20, 2024, ITS filed the present notice of removal—more than one year after the actions commenced.

Defendants assert Plaintiffs acted in bad faith to prevent ITS from removing these consolidated cases when they waited until November 2024 to assert their claims against ITS and Emoji. Defendants generally argue Plaintiffs could have asserted their claims against ITS and Emoji in April when they possessed the Cab Card, and so their decision to wait until November after they received the Lease Agreement and text exchange was in bad faith.

A case removed to federal court based on diversity of citizenship "may not be removed … more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1). The

bad-faith exception is normally considered in the context of a plaintiff "who joined—and then, after one year, dismissed—defendants that they could keep in the suit, but that they did not want to keep in the suit, except as removal spoilers." *Aguayo v. AMCO Ins. Co.*, 59 F.Supp.3d 1225, 1266 (D.N.M. 2014). Nonetheless, the bad-faith exception is an equitable exception meant to prevent any form of gamesmanship by plaintiffs to circumvent removal jurisdiction under the one-year limitation. *Rowan v. State Farm Fire & Casualty Co.*, 2019 WL 4166697, at * 4-5 (W.D. Okla. Sept. 3, 2019). The Tenth Circuit has not provided guidance on how to apply the bad-faith exception, however, the two-step analysis set forth in *Aguayo* has generally been accepted in district courts throughout the Tenth Circuit and beyond. *Id.* "Still, other courts have rejected *Aguayo* and instead adopted an 'intentional misconduct' test to assess whether plaintiff acted in bad faith," or "other courts have analyzed several enumerated factors to determine whether a plaintiff has acted in bad faith." *Valdiviez v. Bridgestone Americas Tire Ops. LLC*, 2024 WL 3616850, at *3 (D.N.M. Aug. 1, 2024) (collecting cases). Under any analysis, the burden of proof is on the removing defendant. *Id.* at *5. While the Court will primarily focus on the analysis laid out in *Aguayo* as adapted to the circumstances in this case, under any analysis, Defendants have not met their burden in showing that Plaintiffs acted in bad faith to prevent removal.

The two-step analysis set out in *Aguayo* is widely accepted by district courts in the Tenth Circuit, but is primarily applicable to a context were a plaintiff joined a removal-spoiling party to the action but then dismissed them after the one-year removal limitation passed. *Aguayo,* 59 F.Supp.3d at 1266. For this analysis,

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the

> defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*Id.* at 1262-63.

While the first step of this analysis is not applicable to these circumstances where there was not a removal spoiler, the bad-faith inquiry in *Aguayo* "focuses on the plaintiff's subjective intent." *Id.* at 1266. The statutory requirement in § 1446(c)(1) that the plaintiff "acted in bad faith in order to prevent" removal suggests "intentionality and purpose." *Id.* "Bad faith should not refer simply to a desire to stay in state court; the Court will demand that this desire be the but-for cause of the plaintiff's decision." *Id.* at 1273. Further, "the Court will draw all reasonable inferences in the plaintiff's favor" as there is "a general presumption against removal." *Id.* at 1276-77 (citing *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995)).

The only evidence of bad faith Defendants offer is Harris's Rule 26 disclosure of the Cab Card photograph in April of 2024. Defendants argue that the photograph shows Plaintiffs could have raised claims against ITS and Emoji in April but waited until November to prevent removal. Plaintiffs rebut that it wasn't until after Vamar produced the documents in October that Plaintiffs had a good faith basis to assert claims against Emoji and ITS.

In April, Plaintiffs were aware that Emoji was the owner/lessor of the truck, Vamar was the "Carrier Responsible for Safety," and ITS was the load broker. Additionally, a search on the United States Department of Transportation website would have revealed that Emoji was not an authorized motor carrier. However, it wasn't until Vamar's disclosures in October that Plaintiffs learned the extent to which Emoji was involved in the operations of the truck. The text messages and the Lease Agreement revealed: (1) Vamar was paying Emoji rather than Saint Jean directly (ECF 14, Ex. 8), (2) Emoji controlled and determined the means and methods of the performance

of all transportation services (ECF 21, Ex. 10), (3) Emoji retained full control and responsibility for the selection, training, and hiring of drivers (ECF 21, Ex. 10), and (4) Emoji retained sole responsibility for equipment, rests, stops, and the like (ECF 21, Ex. 10). So, while in April Plaintiffs may have known that Emoji was leasing the truck to Vamar, they were not aware of the extent of Emoji's involvement in and control over the operations of the truck. It is Emoji's involvement in and control over the operations of the truck that could potentially put their conduct in violation of Federal Motor Carrier Safety Administration leasing regulations. *See* 49 C.F.R. § 376.12(c)(1) ("authorized carrier lessee shall have exclusive possession, control, and use of the equipment"). Vamar, as the authorized motor carrier, was likely responsible for many of these activities. In sum, the documents produced in October painted a much clearer picture of potential FMCSA violations in a way that the mere knowledge of the roles Emoji, Vamar, and ITS were meant to be playing at the time of the incident did not.

While ITS argues Plaintiff could have raised claims against it based on the information available to Plaintiffs in April or even Vamar's alleged negligence[1], the fact that Plaintiffs waited until more information as to the operation of the truck was made available to them is not itself evidence of bad faith. Defendants offer no evidence to suggest Plaintiffs' purpose in raising claims against ITS and Emoji in November was only to prevent removal. Plaintiffs may have desired to stay in state court, but Defendants do not provide evidence that the desire to stay in state court was the "but-for cause" of Plaintiffs' decision to raise claims against ITS and Emoji. *See Aguayo,* 59 F.Supp.3d at 1273. Additionally, while the timing of the additions may seem suspect, there is no evidence offered of delay upon the new information being made available to Plaintiffs and mere "suspicious timing" will not suffice. *See Aguayo*, 59 F.Supp.3d at 1277. Rather, the timeline of

---

[1] Ironically, ITS also argues that Plaintiffs offer "no evidence that ITS hired Emoji or knew of Emoji's existence," but the sufficiency of the evidence against ITS is irrelevant to this bad-faith inquiry.

events suggests Plaintiffs sought information regarding the lease agreement and Saint Jean's employers at the beginning of September. Once this new information was made available to them they acted promptly to amend their complaints—Harris moved to amend within seven days and Gruetzmacher within twenty.

Even if the Court were to consider the "intentional misconduct" test or the multi-factor analysis laid out by other district courts, the result remains the same—Defendants have not provided sufficient evidence of bad faith to rebut the general presumption against removal. The "intentional misconduct" test requires a defendant to show the plaintiff took intentional "action or inaction … to hold the nondiverse defendants in the suit." *Dutchmaid Logistics, Inc. v. Navistart, Inc.,* 2017 WL 1324610, at *2 (S.D. Ohio April 11, 2017). The multi-factor analysis varies but has considered factors such as active litigation of claims, knowledge of the validity of claims, delaying or intentionally employing removal-defeat strategies, the explanation for dismissing defendants, and more. *H&B Ventures, LLC v. State Auto Prop. & Casualty Ins. Co.*, 686 F.Supp.3d 846, 851 (E.D. Mo. 2023) (collecting cases). These analyses, like the one laid out in *Aguayo,* are designed for the scenario where a plaintiff keeps nondiverse defendants in the case to prevent removal. Nonetheless the focus is on the intention of a plaintiff's conduct being to prevent removal. All three analyses essentially require that a plaintiff deliberately act with the intent to prevent removal. *See id.*

And under any analysis, Defendants have the burden of demonstrating Plaintiffs' bad faith. *Valdiviez*, 2024 WL 3616850, at *5. The only evidence Defendants offered was that Plaintiffs *could have* raised the claims against ITS and Emoji in April. Yet, Plaintiffs offer a viable, good-faith rationale as to why they did not raise the new claims until November—additional discovery in October produced more substantive evidence of ITS and Emoji's misconduct. Consequently, Defendants fail to meet its burden of showing § 1446(c)(1) bad faith on the part of Plaintiffs in

raising new claims against ITS and Emoji in November. Accordingly, the Court will remand the consolidated action back to state court for this reason.[2]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Ashley Harris's Motion to Remand is GRANTED. The consolidated action is hereby remanded back to Wyoming's Third Judicial District Court, Sweetwater County. The Clerk of Court will please mail a certified copy of this order of remand to the clerk of the State Court, whereupon the State Court shall resume jurisdiction and proceed with the consolidated action. The Clerk of Court will then please close this case.

DATED this 20th day of February, 2025.

Scott W. Skavdahl
United States District Judge

---

[2] As an alternative argument Plaintiffs raise the question of whether Philona Marcellus, the owner of Emoji Logistics, LLC, could consent to removal on behalf of Emoji. The precise issue of whether counsel is required for consent to removal has not been addressed by the Tenth Circuit. Defendants rely on *Harrison v. Whatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001), to argue that consent to removal is simply a ministerial act like a notice of appeal that does not require counsel. However, the Court notes that in this case it remains that no counsel has entered an appearance for the LLC. Nevertheless, the Court need not reach the issue in the absence of bad faith being shown.